UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ANDREA SMITH,

Plaintiff,

v. Case No: 6:17-cv-1084-Orl-TBS

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

---

## ORDER[1]

This is an action brought under 42 U.S.C. §405(g) to obtain judicial review of the decision of Defendant the Commissioner of Social Security, to discontinue disability benefits awarded to Plaintiff Andrea Smith under the Social Security Act. Pending before the Court is the Acting Commissioner of Social Security's Motion for Partial Summary Judgment (Doc. 11). The Commissioner seeks summary judgment on Counts One and Two of Plaintiff's complaint "and any and all contentions arising out of an alleged violation of Plaintiff's due process rights." (Id.). Plaintiff has filed an opposition brief with an appendix (Doc. 19). The transcript of administrative proceedings has also been filed (Doc. 10). For the reasons explained herein, Defendant's motion is **GRANTED.**

### Background

Although Defendant's motion presents with a complicated history, all pertinent facts are undisputed. According to the allegations of the complaint and as set forth in the administrative transcript,[2] in April of 2009, Plaintiff applied for a period of disability and

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge and the matter has been referred to me in accordance with 28 U.S.C. §636(c).

[2] References to the administrative record will be designated "Tr."

disability insurance benefits under the Social Security Act (Tr. 327). She was found disabled by administrative law judge ("ALJ") David Daugherty, on May 3, 2010 (Tr. 165-172). At the time, Plaintiff was represented by Eric C. Conn, a once prominent Social Security lawyer in Eastern Kentucky (Doc. 1, ¶2; Tr. 181-82). ALJ Daugherty issued a fully favorable decision without a hearing by relying on evidence submitted by Mr. Conn from Dr. Frederic Huffnagle (Doc. 14 at 4; Tr. 171).

In October of 2013, the Senate Committee on Homeland Security and Governmental Affairs issued a report accusing Mr. Conn and ALJ Daugherty of committing fraud (Doc. 14-1).[3] As set forth in the papers and not disputed by Plaintiff, Mr. Conn orchestrated one of the largest fraud schemes in the history of the Social Security Administration ("SSA") by conspiring with ALJ Daugherty and four doctors, one of whom was Plaintiff's medical source, Dr. Huffnagle. Mr. Conn, a Dr. Adkins, and ALJ Daugherty were charged in an 18-count indictment returned on April 1, 2016 in the U.S. District Court for the Eastern District of Kentucky. See Indictment, U.S. v. Conn, et al., 5:16 cr 22 (E.D. Ky. Apr. 1, 2016). In a related case, on March 24, 2017, Mr. Conn pleaded guilty in federal court for his role in a scheme to fraudulently obtain $550 million in federal disability payments. As part of his plea, Mr. Conn admitted that he submitted falsified medical documents, and ALJ Daugherty authored decisions granting disability benefits, in over 1,700 claimants' cases. In his plea, Mr. Conn admitted that he routinely prepared and medical professionals signed evaluation reports stating that claimants had limitations considered disabling by Defendant, irrespective of the claimants' actual physical or

[3] Plaintiff has tendered a Staff Report, Committee on Homeland Security and Governmental Affairs, United States Senate (Doc. 14-1); an October 25, 2016 letter from the Social Security Administration to Plaintiff (Doc. 14-2); and the Plea Agreement filed in United States v. Conn, No. 5:17-cr-43 (E.D. Ky. Mar. 24, 2017) (Doc. 14-3). While these documents are not in proper evidentiary form, there is no dispute as to their authenticity and no objection as to their consideration by the Court.

mental conditions. See Plea Agreement, U.S. v. Conn, et al., 5:17-cr-43 (E.D. Ky. March 24, 2017) (Doc. 14-3). ALJ Daugherty, who was bribed by Mr. Conn, would assign Mr. Conn's cases to himself and—without holding a hearing—issue favorable decisions to Mr. Conn's clients relying on the fraudulent evidence submitted by Mr. Conn. On May 12, 2017, ALJ Daugherty pleaded guilty in federal court to his role in the scheme. See U.S. v. Daugherty, 5:17-cr-66 (E.D. Ky. May 12, 2017). Dr. Huffnagle is deceased. See Carter v. Colvin, 220 F. Supp. 3d 789, 792 (E.D. Ky. 2016).

On May 12, 2015, the Acting Counsel to the Inspector General of the Social Security Administration sent a Referral Pursuant to Section 1129(1) of the Social Security Act (the "Act") to the agency's general counsel (Tr. 400, herein "the referral"). The referral stated in part:

> Pursuant to section 1129(1) of the Social Security Act, 42 U.S.C. § 1320a-8(1), the Social Security Administration (SSA) Office of the Inspector General (OIG) **previously provided** you with information regarding 1,787 individuals. These individuals were formerly represented by attorney Eric C. Conn, or his firm, and OIG had reason to believe that fraud was involved in their applications for Social Security benefits. Specifically, in these cases, OIG had, and still has, reason to believe that Mr. Conn or his firm submitted pre-completed "template" Residual Functional Capacity forms purportedly from Bradley Adkins, Ph.D., Srinivas Ammisetty, M.D., Frederic Huffnagle, M.D., or David P. Herr, D.O., dated between January 2007 and May 2011, in support of the individuals' applications for benefits.
>
> SSA OIG understood that SSA would use this information to carry out its responsibilities to redetermine cases involving fraud or similar fault under sections 205(u) and 1631(e)(7)(A)(i) of the Act, 42 U.S.C. §§ 405(u) and 1383(e)(7)(A)(i). **The previous referral was with the understanding that SSA was not to take any adverse action against any individual on the list until further notice.**
>
> This Memorandum is to advise you that we are not aware of any objections to SSA moving forward with its administrative processing of the redeterminations of the 1,787 individuals whose names were previously provided by OIG to SSA on July 2, 2014. As such, **this**

> **notice is to inform SSA that it may proceed with its redetermination of the cases of the individuals on the previously transmitted lis**t.

(Tr. 400, emphasis added).

On May 18, 2015, six days after the date of the referral, the Appeals Council of the SSA sent notice to Plaintiff that the Office of Inspector General had informed SSA that "there was reason to believe fraud was involved" in certain cases involving evidence tendered by Mr. Conn from four doctors, including Dr. Huffnagle (Tr. 219). The notice stated in part:

> Under sections 205(u) and 1631(e)(7) of the Social Security Act (Act), SSA must redetermine an individual's disability case when there is reason to believe fraud or similar fault was involved in that individual's application for benefits. In conducting a redetermination, SSA must disregard any evidence from one of the medical providers above when the information was submitted by representative Eric C. Conn or other representatives associated with Mr. Conn's law office.

(Tr. 210). Defendant told Plaintiff it had looked at her case to determine if ALJ Daugherty's decision was supported by substantial evidence after disregarding the evidence from Dr. Huffnagle, and: "[a]fter reviewing all of the relevant information, we plan to send your case back to an Administrative Law Judge for more action and a new decision." Id. Defendant set aside ALJ Daugherty's favorable decision and Plaintiff was invited to send more evidence to the agency for consideration (Tr. 211-212).

On September 21, 2015, Plaintiff had a prehearing teleconference with an attorney with the Social Security Office of Disability Adjudication and Review (Tr. 126-38). The attorney noted that the ALJ "will be considering whether you were disabled between December 31st of 2008 and May 3rd of 2010." (Tr. 133). After setting forth a list of medical evidence of record, the attorney asked Plaintiff if she was "aware of any other medical sources who examined you or for whom you received treatment between the

dates I've mentioned" (Tr. 133-134). Plaintiff replied: "I can't think right now." (Tr. 134). Plaintiff was told to notify the agency should she later recall any other medical providers or have any other evidence relating to whether she was disabled between those dates. Id.

Following a postponement requested by Plaintiff (Tr. 255), a new ALJ conducted a hearing on September 8, 2016 (Tr. 139-61). Plaintiff was represented by new counsel. After considering the hearing testimony and relevant evidence, the new ALJ concluded that there was insufficient evidence in the administrative record to support Plaintiff's original entitlement to benefits and, on October 12, 2016, issued an unfavorable decision finding that Plaintiff was not disabled at any point between her original application and the May 3, 2010 date of ALJ Daugherty's decision (Tr. 10-32). Accordingly, Plaintiff's disability benefits were terminated. The Appeals Council denied Plaintiff's request for review on April 11, 2017, which made the ALJ's October 12, 2016 decision the Commissioner's final decision on Plaintiff's claim for benefits (Tr. 1-6).

Plaintiff filed a three count complaint in this Court (Doc. 1). In Counts One and Two, she alleges that the SSA "violated her Fifth Amendment right to due process by unduly delaying the redetermination hearing and by excluding certain evidence submitted by Mr. Conn." (Doc. 1, ¶6). In Count Three, she contends that the Commissioner's finding that she was not disabled is not supported by substantial evidence. (Id., ¶7). The Commissioner has moved for summary judgment on Counts One and Two (the alleged due process violations).[4]

## Discussion

Standard of Review

[4] Count Three remains for briefing and resolution in the usual course.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). An issue of fact is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if the fact could affect the outcome of the lawsuit under the governing law. Id. In determining whether a genuine dispute of material fact exists, the Court must read the record and the evidence presented in the light most favorable to the non-moving party. See Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets this burden then the burden shifts to the non-moving party to "go beyond the pleadings," meaning the non-movant must either (i) present specific evidence showing that there is a genuine issue of material fact; or (ii) show by other means that the moving party is not entitled to judgment as a matter of law. Id. at 324–26. In reviewing the record "the Court may not undertake the jury's function of weighing the evidence properly offered by the parties." Gordilis v. Ocean Drive Limousines, Inc., No. 12-cv-24358-JLK, 2014 WL 2214274, *1 (S.D. Fla. May 28, 2014), citing Latimer v. Roaring Toyz, Inc., 601 F.3d 1224, 1237 (11th Cir.2010) ("Neither we nor the district court are to undertake credibility determinations or weigh the evidence.").

Analysis

The issues presented have not been addressed by the Eleventh Circuit, and there

is presently no controlling opinion on point. However, because the fallout from the Conn/Daugherty fraud occurred primarily in Kentucky, several courts there and one in West Virginia have addressed these issues directly, and my analysis of those decisions informs my findings here.

*The Redetermination Process*

Under the Social Security Act, Defendant is required to redetermine an individual's entitlement to benefits at any time that there is "reason to believe that fraud or similar fault was involved in the application of the individual for such benefits." 42 U.S.C. §§ 405(u)(1)(A) and 1383(e)(7)(A)(i). The Act describes the redetermination process Defendant must undertake when the case is referred to it by the OIG or when Defendant uncovers fraud itself. By statutory mandate, as soon as the OIG "has reason to believe that fraud was involved in the application of an individual for monthly insurance benefits", the OIG must refer the information, including the individual claimant at issue, to Defendant. See 42 U.S.C. § 1320a-8(1); Robertson v. Berryhill, No. CV 3:16-3846, 2017 WL 1170873, at *1 (S.D.W. Va. Mar. 28, 2017). After this referral, or when Defendant through its own investigation has reason to believe fraud or similar fault is involved, Defendant "shall immediately redetermine" those cases involving fraud or similar fault. 42 U.S.C. § 405(u)(1)(A). Defendant is required as part of this redetermination process to "disregard any evidence if there is reason to believe that fraud or similar fault was involved in the providing of such evidence." 42 U.S.C. §§ 405(u)(1)(B) and 1383(e)(7)(A)(ii). As explained in Robertson:

> A redetermination hearing decides whether the disability claimant qualified for benefits at the time of the original application. See Hearings, Appeals, & Litigation Law Manual (HALLEX) I-1-3-25(C)(3) ("[A]n adjudicator will be directed to consider the claim(s) only through the date of the final and binding determination or decision on the

> beneficiary's or recipient's application for benefits."). The adjudicator's decision must rely only on new evidence and evidence remaining in the file after excluding the tainted evidence as mandated by § 405(u). HALLEX I-1-3-25(C)(4)(c). Interpreting the language in § 405(u), HALLEX provides that "adjudicators do not have discretion to reconsider the issue of whether the identified evidence should be disregarded when based on an OIG referral...." HALLEX I-1-3-25(C)(4)(a). A claimant can appeal the adjudicator's decision to discontinue disability benefits, but when based on an OIG referral, "the beneficiary or recipient may not appeal the agency's statutory mandate to conduct the redetermination or to disregard evidence...." HALLEX I-1-3-25(C)(6).

2017 WL 1170873, at *2.

Social Security Ruling 16-1p makes clear that "[f]raud and similar fault redeterminations under sections 205(u) and 1631(e)(7) of the Act are distinct from reopenings as described in 20 CFR 404.987–404.996 and 20 CFR 416.1487–416.1494." SSR 16-1p n.1. Section (D)(3) of the same ruling states that "[a]n individual may appeal our finding of fraud or similar fault. However, we will not administratively review information provided by SSA's Office of the Inspector General under section 1129(l) of the Act regarding its reason to believe that fraud was involved in the individual's application for benefits."[5] It is undisputed that Defendant followed this procedure in Plaintiff's case.

*Due Process*

Counts One and Two allege that Defendant violated Plaintiff's due process rights under the Fifth Amendment to the U.S. Constitution. In Count One Plaintiff alleges:

> 27. Plaintiff was not given an opportunity in the administrative proceedings to challenge the finding that Dr. Huffuagle's report was fraudulent.
>
> 28. While there is evidence that Conn or his employees may have completed or signed some of the medical source statements prepared by Dr. Huffnagle, the Commissioner has never introduced any

[5] The effective date of this Ruling was March 14, 2016. See SSR 16-1p, 2016 WL 1029284. The administrative decision in this case was rendered October 12, 2016 (Tr. 10- 32).

> evidence to show that the report in Plaintiff's case was one of those fraudulent reports.
>
> 29. Under the Due Process Clause, Plaintiff should have been given an opportunity to argue that Dr. Huffnagle's findings were accurate and were consistent with the medical evidence.

Count Two is directed to the timing of the redetermination process. Plaintiff alleges:

> 30. Plaintiff also asserts that the Commissioner violated her right to due process by unduly delaying the reconsideration proceedings.
>
> 31. The Agency was aware as early as 2008 that ALJ Daugherty was granting benefits to 100 percent of Mr. Conn's clients. That fact was widely publicized in the national media in 2011. Two years later, a Senate Committee prepared a report describing the details of the alleged scheme. Yet, the Commissioner did not place Mr. Conn's clients in redetermination proceedings until mid-2015, and Plaintiffs hearing was not held until September of 2016.
>
> 32. The delay in holding the hearing substantially prejudiced Plaintiffs ability to present her case.
>
> 33. In the redetermination proceeding, Judge Benton was only allowed to consider evidence that was relevant to the time period before Judge Daugherty's May 2010 decision.
>
> 34. After Plaintiffs disability benefits were granted, she moved to Florida and lost contact with her former doctors. Therefore, it was difficult for her to locate the medical evidence that she needed to support her entitlement to benefits.
>
> 35. On information and belief, Mr. Conn destroyed some of Plaintiffs medical records in an attempt to avoid prosecution.
>
> 36. If the redetermination hearing had been held when Mr. Conn's fraud was first discovered, Plaintiff would have stood a better chance at having her benefits continued.
>
> 37. In short, the delay in commencing the redetermination proceedings deprived Plaintiff of her constitutional right to a fair hearing.

(Doc. 1, ¶¶ 27-37).

The Due Process Clause guarantees the right "to be heard at a meaningful time in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976). Plaintiff argues

that the Commissioner did not provide her a right to be heard at a meaningful time in that the Commissioner unreasonably delayed the redetermination proceeding, which substantially prejudiced Plaintiff's ability to present her case. She also contends that her right to be heard in a meaningful manner was violated, in that the Commissioner refused to give her an opportunity to challenge the exclusion of Dr. Huffnagle's report from consideration. Defendant maintains that Plaintiff's argument is both factually and legally unsound, noting that it has been rejected by other courts. Upon review, the Court finds that Plaintiff has failed to establish a genuine issue of material fact and the Commissioner is entitled to summary judgment on the due process counts as a matter of law.

Count One

Plaintiff argues that the exclusion of Dr. Huffnagle's opinion conflicts with her right to challenge any factual determination that results in the loss of her property right to benefits. She also contends that under the balancing approach set forth in Mathews, her interest in continued receipt of these benefits outweighs any administrative burden that may be imposed on the SSA if she is allowed to challenge the finding of fraud.

Plaintiff's argument is premised on the assumption that Mr. Conn's then-suspected[6] fraud was the reason she was denied disability benefits. This assumption is incorrect. Defendant cannot terminate an individual's benefits based on suspected fraud alone. 42 U.S.C. §§ 405(u), 1383(e)(7); see, e.g., SSR 16-1p (Mar. 14, 2016). Rather, as explained by the Robertson court in addressing and rejecting an identical challenge:

> Although Plaintiff could not challenge the determination of possible fraud in the original disability application, the redetermination hearing satisfies constitutional due process by allowing Plaintiff to object to the factual determination that directly formed the ALJ's decision to terminate benefits. **The final decision that Plaintiff did not qualify for**

[6] When the October 2016 administrative decision under review here was issued, Mr. Conn and ALJ Daugherty had not yet pled guilty.

> **disability benefits did not turn on the fraud determination; the decision turned on the sufficiency of evidence.** The OIG's referral based on the reason to believe fraud existed triggered the redetermination process, and Plaintiff was given the full opportunity, with assistance from the SSA, to develop new evidence to prove his disability.

Robertson, 2017 WL 1170873, at *5 (emphasis added); see also Carter v. Colvin, 220 F. Supp. 3d 789, 811 (E.D. Ky. 2016) ("Because the procedural protections afforded by the Agency satisfy any concern about the exclusion of suspect evidence, plaintiffs' due process arguments are also unconvincing."); Perkins v. Colvin, 224 F. Supp. 3d 575, 579 (E.D. Ky. 2016) ("the decision to revoke Perkins's benefits did not hinge on the fraud allegation. Rather, the revocation was premised on the lack of sufficient evidence to support the initial benefits award. Thus, because Perkins was given a full opportunity to supplement and/or develop new evidence to substitute for the excluded evidence (and indirectly rebut the allegations of fraud), he was not denied due process;" but see Hicks v. Colvin, 214 F.Supp.3d 627, 645 (E.D. Ky. Oct. 12, 2016) (granting a plaintiff's motion for summary judgment and denying Defendant's cross motion on due process grounds).[7] The Court is persuaded by the reasoning in Robertson, Carter, and Perkins. "[B]eing subject to a redetermination without a threshold adjudication does not violate due process." Carter, 220 F. Supp. 3d at 804.

"The ordinary mechanism" used by courts to "determin[e] the procedures that are necessary" to comply with the guarantee of due process "is the test ... articulated in Mathews v. Eldridge." Hamdi v. Rumsfeld, 542 U.S. 507, 528 (2004) (plurality opinion). The Robertson and Carter courts applied the Mathews balancing test, which directs courts to weigh three factors in evaluating procedural due process claims:

[7] Hicks, Perkins and related cases are currently on appeal to the Sixth Circuit.

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Carter, 220 F. Supp. 3d at 799, citing Mathews, 424 U.S. at 334-35.

With respect to the first factor, "the interest of an individual in continued receipt of [disability] benefits is a statutorily created 'property' interest protected by the Fifth Amendment." Mathews, 424 U.S. at 332. The Court agrees that Plaintiff's interest is substantial.

As for the second prong, the Court finds the risk of an "erroneous" deprivation of that interest through the procedures used to be low. Plaintiff was given the opportunity to submit new evidence relating to the pertinent time period and the SSA was prepared to assist her in obtaining and developing evidence, if requested. Additionally, the exclusion of Dr. Huffnagle's opinion does not raise a great risk of erroneous deprivation. Dr. Huffnagle was not a treating physician and his opinion is not entitled to controlling weight or deference under the regulatory framework. Although Plaintiff argues that the proceedings "would have been fairer if Smith had been given an opportunity to contest the exclusion of Dr. Huffnagle's report, which supported her claim of disability," she offers no explanation as to how she could possibly do so. She states that she would testify that Dr. Huffnagle performed a thorough exam but, the existence of an exam does not prove or disprove the legitimacy of the opinions.[8] And, as discussed above, the existence of fraud is not the issue in a redetermination proceeding.

[8] In view of the guilty pleas entered by Mr. Conn and ALJ Daugherty, and the death of the only witness who could possibly testify to the legitimacy of his own opinions, the lack of an opportunity for Plaintiff to contest the finding of fraud is realistically harmless.

There are other procedures available to mitigate the effect of an unfavorable decision on redetermination. Any affected individual who is truly disabled can establish a new entitlement to disability benefits by filing a subsequent application. Those who meet the statutory income and resource requirements will be eligible for benefits and those still insured at the time of their claimed onset date will also be entitled to additional benefits, regardless of their current financial status. Moreover, any affected individual can obtain a waiver of overpayment if she is without fault and collection "would defeat the purpose of this subchapter or would be against equity and good conscience." 42 U.S.C. § 404(b); see also 20 C.F.R. §§ 404.501-.502a, 404.506-.512. As the Carter court observed, "[i]f waivers of overpayment are granted (which is likely), and the plaintiffs are awarded Title XVI [or Title II] benefits, the award will go a long way to making them whole." Carter, 220 F.Supp.3d at 801.[9]

Lastly, the Government's interest is legitimate and compelling. As the arguments presented by the parties are identical to those presented in Robertson and Carter, the Court finds the analysis in those cases to be directly on point and persuasive. "Because there is a strong public interest in maintaining the integrity of the criminal prosecution, and not needlessly tying-up the process of redetermining benefits, the final interest weighs in favor of the government." Carter, 220 F. Supp. 3d at 804.[10]

The Commissioner is entitled to summary judgment as to Count One.

---

[9] Although Plaintiff contends that she is not eligible for SSI and cannot file a new application as her insured status under Title II of the Social Security Act expired in December of 2013, she has filed a request for a waiver of the overpayment (Tr. 116-24), which is pending.

[10] Plaintiff contends that the Commissioner's "evidentiary rule" precluding challenges to the exclusion of Dr. Huffnagle's report should not control because the statute it is based on is ambiguous. The statutory provision reads: "(B) When redetermining the entitlement, or making an initial determination of entitlement, of an individual under this subchapter, the Commissioner of Social Security shall disregard any evidence if there is reason to believe that fraud or similar fault was involved in the providing of such evidence." 42 U.S.C. §405(u)(1)(B). I find nothing ambiguous here. Plaintiff's contention is without merit.

Count Two

Plaintiff alleges that Defendant violated the Act's requirement at 42 U.S.C. § 405(u)(1)(A) that redetermination hearings be initiated "immediately" upon reason to believe that fraud or similar fault was involved. Plaintiff argues that if the Commissioner had held a new hearing as soon as Mr. Conn's fraud was publicly revealed, she "might have been able to remember the names of more of her medical providers, and might have been able to obtain additional evidence to bolster her claim." Defendant moves for summary judgment on the grounds that this claim is factually inaccurate and fails to state an actionable claim.

Section 205(u) of the Act provides:

> (u) Redetermination of entitlement
>
> (1)(A) The Commissioner of Social Security shall immediately redetermine the entitlement of individuals to monthly insurance benefits under this subchapter if there is reason to believe that fraud or similar fault was involved in the application of the individual for such benefits, unless a United States attorney, or equivalent State prosecutor, with jurisdiction over potential or actual related criminal cases, certifies, in writing, that there is a substantial risk that such action by the Commissioner of Social Security with regard to beneficiaries in a particular investigation would jeopardize the criminal prosecution of a person involved in a suspected fraud.

42 U.S.C. § 405(u)(1)(A). It is undisputed that the SSA received the referral on May 12, 2015 (Tr. 400) and began the redetermination process by notifying Plaintiff on May 18, 2015 (Tr. 210-213). "According to the Act, the SSA must begin the redetermination process once the referral is made. The fact that an investigation involving the same individuals began years prior does not necessitate the SSA's immediate reaction—only the referral does." Robertson, 2017 WL 1170873, at *11. Defendant acted within a week of receiving the referral of Plaintiff's case.

Section 205(u) of the Act specifically contemplates that Defendant may delay taking adverse action if it would jeopardize the criminal prosecution of a person involved in the suspected fraud. See 42 U.S.C. §§ 405(u)(1)(A). The OIG may delay referring cases to the agency for the same reason. 42 U.S.C. § 1320a-8(l). Here, the initial letter identifying the individuals described in the referral letter was sent to Defendant on July 2, 2014, "with the understanding that SSA was not to take any adverse action against any individual on the list until further notice." Although the record does not include a certification from a prosecutor, as contemplated in the statutes, the language of the referral, the history of the investigation as set forth in related cases,[11] and the fact that Mr. Conn, ALJ Daugherty and Dr. Adkins were indicted on April 1, 2016, make clear that a criminal investigation was underway or at least contemplated when the July 2014 initial letter was sent.

Even assuming Defendant erred in failing to act immediately upon receipt of the initial 2014 letter, Plaintiff fails to convince the Court that there is a remedy for this error. "The statute does not contain language regarding consequences to the SSA if the agency fails to act with immediacy. The fact that the SSA can reopen a disability determination at any time for fraud or similar fault supports the idea that the immediacy requirement was created to protect the public fisc rather than provide a claimant with a speedy redetermination." Robertson, 2017 WL 1170873, at *10; see also Carter, 220 F. Supp. 3d at 809 ("no evidence in the statutory language to suggest that those who received

[11] As the Carter court explained: "Many years passed between the initial accusations of wrongdoing (2007) and the initial (purported) reports to the OIG (2009), and action being taken on the redeterminations (2015). This lapse is at least partially understandable, given the process of investigating and substantiating these claims takes time, especially where internal misconduct and alleged cover-ups were involved. The statute contemplates delay so as to not interfere with criminal or civil proceedings." Carter, 220 F. Supp. 3d at 808.

benefits through a fraudulent scheme (whether witting or unwitting participants) are the class of individual meant to be protected by the immediacy requirement"). In fact, Plaintiff cites no case where such a remedy was granted.[12] Defendant is entitled to summary judgment on Count Two.

## Conclusion

Defendant's Motion for Partial Summary Judgment is **GRANTED** and summary judgment is entered in favor of Defendant and against Plaintiff on Counts One and Two of Plaintiff's complaint. The case will proceed on the remaining count in the usual course and a separate briefing order will issue.

**DONE** and **ORDERED** in Orlando, Florida on November 2, 2017.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to Counsel of Record

---

[12] To the extent Plaintiff generally relies on Hicks v. Colvin, 214 F. Supp. 3d 627 (E.D. Ky. 2016), order corrected sub nom. Hicks v. Berryhill, No. CV 16-154-ART, 2017 WL 1227929 (E.D. Ky. Mar. 31, 2017), she correctly observes that Hicks did not address the timeliness issue. See Doc. 14, n. 1.